UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                   CRIMINAL NO. 07-50004

versus                                     JUDGE STAGG

DEMONE TERRELL                             MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Before the court is Defendant's Motion to Suppress (Doc. 18).  For the reasons that follow, it is recommended that the motion be denied.

### The Facts

An evidentiary hearing was held on March 19, 2007.  The evidence at the hearing establishes that Houston, Texas Police Officers Pedro Lopez, Jr. and Gary Doyle were assigned to the Narcotics Interdiction Squad at George Bush International Airport.  Lopez had been a police officer in Houston for 15 years and received extensive training regarding package interdiction at public transportation systems and package delivery stores such as UPS, DHL and FedEx.  Doyle had served as a police officer for 24 years and was certified as a narcotics canine handler.  He has worked with drug dogs for 16 years and with his present canine, Roy, for six years.  Roy is certified to detect marijuana, cocaine, heroin and methamphetamine.  Methamphetamine is an ingredient of MDMA or Ecstasy.

During the evening of January 10, 2007, Lopez and Doyle were standing on opposite sides of the conveyor belt in the FedEx distribution center in Houston watching the out-bound packages as they were off-loaded from trucks and moved to air cargo containers. The packages were being sorted for out-bound flights from Houston later that evening. Tr. 11, 29-30. The officers were checking the packages for indications that they contained contraband, such as drugs or money. Such indicators include packages going to drug "demand cities" east and north of Houston, such as New York and Chicago, as well as cities in Louisiana and Florida. Tr. 4. Other indicators include handwritten shipping labels; labels with generic fake names like "John Smith"; labels containing fake, disconnected or non-working telephone numbers; and evidence of the use of masking agents to conceal the odor of narcotics. Tr. 5-7.

Lopez and Doyle usually work the FedEx facility between Tuesdays and Thursdays of each week. Tr. 15. During the typical investigation, Doyle runs his canine, Roy, along the conveyor belt from time to time to check the packages moving on the belt. The canine works the belt for 10-15 minutes at a time. The canine is then returned to the kennel in Doyle's truck to rest, while the officers visually examine packages as they move along the conveyor belt. If the officers spot a suspicious looking package while Roy is in the kennel, they remove it from the conveyor so that Roy can sniff the package when he returns to duty. Tr. 13, 35.

The evening in question was a "slow evening." Tr. 12. Lopez and Doyle removed two suspicious-looking packages from the conveyor belt that they wanted the canine to examine. The package at issue in this case was removed from the belt by Lopez, who testified that he smelled a strong odor of talcum powder, a known masking agent, when the package moved past him. He also noticed that the shipping label was handwritten (businesses usually use preprinted labels), and that the package was going to Shreveport, which he characterized as a "demand city." Tr. 6-7, 16-17. Lopez also noticed that the rather large 14" x 14" x 14" box only weighed eight pounds and was shipped "priority overnight." Tr. 7, 38. These facts caused Lopez to suspect that the package contained marijuana, so he removed the package from the belt and called the phone number on the label for the alleged shipper. It was a fake number. Tr. 20. Lopez then set the package aside and asked Doyle to have his canine examine it. Tr. 7. When the canine returned to duty about 20-30 minutes later, he alerted on the package. Tr. 8. Had the canine not alerted, there was still time to put the box back on the belt and have it delivered by FedEx on time. Tr. 8-9, 42.

After the canine alerted, a search warrant was obtained to open the package. Inside the box was another, smaller box (wrapped in gift paper) containing a portable CD player/radio. Tr. 23, 39. Insider the CD player were five bundles of ecstacy. No talcum power was in the box, Tr. 19, and by the time of the hearing on the motion to suppress, the undersigned could detect no evidence (by sight or smell) of talcum powder anywhere in or on the package. Lopez testified, however, that it is possible that the shipper just rubbed the

powder on the contents of the box, so that, if the package were opened, the powder would not be visible.  Tr. 24.  Doyle did not see powder inside the large box, but he did see indications that some type of white powder was located on the outside of the smaller gift box. Tr. 43.

**Defendant's Arguments**

Defendant argues that the seizure of the FedEx package was not supported by reasonable suspicion that it contained contraband.  Defendant contends that Officer Lopez's testimony that he smelled a strong odor of talcum powder is not worthy of belief, given the size and nature of the FedEx facility and the fact that no quantity of talcum powder was ever found in the package.  Defendant further argues that, even if the court credits Officer Lopez's testimony, there still was no reasonable suspicion: "A handwritten airbill, on a package destined for Shreveport with the alleged odor of talcum powder coming from it raises no more a *reasonable* suspicion of concealed contraband than a hooptie automobile with an air-freshener dangling from the rear-view mirror, driven by a long-haired, young male wearing a tie-dyed 'Grateful Dead' t-shirt."  Defendant's Supplemental Brief, Doc. 28, pp. 6-7 [footnote omitted; italics in original].

**Law and Analysis**

Individuals do not surrender their expectations of privacy in closed containers when they send them by mail or common carrier.  United States v. Villarreal, 963 F.2d 770, 773-774 (5th Cir. 1992).  In United States v. Jacobsen, 466 U.S. 109, 114-115 (1984), another

case involving a FedEx package, the Supreme Court recognized that "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable."[1]

Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them.  <u>Villarreal</u>, 963 F.2d at 774.  Common carriers or other private persons do not violate the Fourth Amendment if they search the packages of others, whether or not they have authority to do so, because the Fourth Amendment protects only against governmental action.  <u>Id</u>.  But if government agents themselves are to open containers that are sent by mail or private carrier, the requirements of the Fourth Amendment must be satisfied.  <u>Id</u>.  Therefore, even if government agents have probable cause to believe that there is contraband in a container sent by mail or common carrier, they generally cannot search it unless they first obtain a warrant, or unless some exception to the warrant requirement applies.  <u>Id</u>.

---

[1]In <u>United States v. Young</u>, 350 F.3d 1302 (8th Cir. 2003), the Eighth Circuit found that a newer version of the FedEx airbill, which expressly provided, among other things, that the shipper had the right to open and inspect the package, eliminated any reasonable expectation of privacy.  According to the court: "We are convinced that if the [Supreme] Court had been faced with the explicit notice present here, its decision would have been otherwise."  <u>Id</u>. at 1307.  <u>But</u> <u>see</u> <u>United States v. Ghali</u>, 317 F.Supp.2d 708 (N.D. Tex. 2004)(the FedEx bill of lading did not contain express language giving FedEx the right to inspect package).  The Government has not asserted that argument in this case, and the terms and conditions on the reverse side of the FedEx airbill for the package in question have not been provided to the undersigned.  Therefore, no opinion is expressed on this issue.

In determining whether a government agent's exercise of control over a package constitutes a reasonable seizure under the Fourth Amendment, courts apply the Terry doctrine's standard of reasonable and articulable suspicion.  United States v. Daniel, 982 F.2d 146, 149-150 (5th Cir. 1993)(DEA agent seized package when he exercised control over it for 45 minutes while waiting for dog sniff); United States v. Morones, 355 F.3d 1108 (8th Cir. 2004)(officer seized package when he removed it from the FedEx mail stream and held it overnight for the dog sniff); United States v. Lux, 905 F.2d 1379, 1382 (10th Cir. 1990).

In this case, the Government does not contend that the removal of the package from the conveyor belt was not a seizure.  Instead, the Government argues that the seizure was proper because, under the totality of the circumstances, Officer Lopez had reasonable suspicion to believe the package contained contraband.  The Government cites other cases that have found reasonable suspicion to justify a temporary seizure of packages based on unusual odors, size and shape of the package, handwritten labels, and/or whether the city of origin or city of destination are common "drug sources." Daniel, supra (reasonable suspicion found to justify temporary seizure based on the size and shape of the package, the use of masking tape along the seams, a handwritten mailing label, the cost of shipping the small package, and the fact that the sender's city was a common "drug source").

Here, there was reasonable suspicion to support the very brief seizure of the package. Officer Lopez noticed a strong smell of talcum powder coming from the box, the label was handwritten and the box was being sent to Shreveport, which is considered to be a "demand

city" for drugs.  When he called the telephone number listed on the label for the alleged shipper, he learned that the number was fake.  These factors, taken in combination, provided reasonable suspicion to justify the extremely limited seizure that occurred in this case.  The package was set on the floor (with a few control packages that were also removed from the conveyor belt) and the canine sniffed the package 20-30 minutes later.[2]  Had the canine not alerted, the package would have been placed back on the conveyor belt and it would have been delivered by FedEx as originally scheduled.

Defendant emphasizes the fact that talcum powder was not found in the box when it was opened.  Tr. 19.  It is possible that the powder had only been rubbed into gift wrapping paper inside the box.  Tr. 24.  It is also possible that, because of the numerous times the box has been opened, evidence of the powder has dissipated.  In any event, the undersigned, after carefully observing Officer Lopez's testimony in the courtroom, finds that Officer Lopez was very credible when he testified that he smelled an odor of talcum powder coming from the package.  Officer Lopez had received extensive training regarding package interdiction, and he had worked in narcotics for seven years.  Tr. 4.  See United States v. Powell, 137 Fed.Appx. 701, 707 (5th Cir. 2005)("[C]ourts should err on the side of deferring to the knowledge and experiences of a trained law enforcement officer's ability to distinguish between innocent and suspicious behavior.").  See also Morones, supra (reasonable suspicion

---

[2]It is not unusual for some packages to fall off of the conveyor belt and onto the floor.  Those packages remain there until the end of the sort and then they are put back on the belt for delivery.   Tr. 36.

found for seizure of FedEx package with a handwritten label, where the shipper paid cash, the package was sent "priority overnight," no telephone numbers were provided, the package was being sent from California to Iowa, and the sender and receiver had the same last name; the factors were considered in light of officer's experience in drug interdiction).

In summary, the odor of talcum powder, when considered with the totality of the other characteristics of the package, provided reasonable suspicion for the temporary seizure of the package.  There was no Fourth Amendment violation in this case.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 18)** be **denied.**

<u>**Objections**</u>

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See Douglass

v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

      THUS DONE AND SIGNED at Shreveport, Louisiana, this 2nd day of May, 2007.


                                        _____
                                           MARK L. HORNSBY
                            UNITED STATES MAGISTRATE JUDGE